Present: All the Justices

ELENA SEROKA STERN, AN INFANT, ETC., ET AL.
                              OPINION BY JUSTICE ROSCOE B. STEPHENSON, JR.
v.  Record No. 960511
                                         November 1, 1996
THE CINCINNATI INSURANCE COMPANY, ET AL.

              UPON QUESTIONS OF LAW CERTIFIED BY THE UNITED STATES
                   COURT OF APPEALS FOR THE FOURTH CIRCUIT


     The United States Court of Appeals for the Fourth Circuit

entered an order of certification requesting that we exercise our

certification jurisdiction, Va. Const. art. VI, § 1; Rule 5:42,

and answer two questions of law involving a dispute regarding

insurance coverage.  By order entered June 11, 1996, we accepted

the questions for consideration.

                                   I

     Elena Seroka Stern and her parents (collectively, the

Sterns) filed a declaratory judgment proceeding against The

Cincinnati Insurance Company (Cincinnati), State Farm Mutual

Automobile Insurance Company (State Farm), and Graphic Arts

Mutual Insurance Company (Graphic Arts) in the Circuit Court of

the City of Lynchburg, seeking, inter alia, a declaration that an

insurance policy issued by Graphic Arts provided coverage for

injuries Elena sustained when she was struck by a motor vehicle.

 Based upon diversity of citizenship, the action was removed to

the United States District Court for the Western District of

Virginia.  The district court granted summary judgment in favor

of Graphic Arts, concluding that the Graphic Arts policy provided

no coverage to the Sterns.  The Sterns appealed to the United

States Court of Appeals for the Fourth Circuit.

The facts are set forth in the Fourth Circuit's certification order.  On March 21, 1995, Elena, age 10, was waiting at her usual school bus stop on the east side of Sandusky Drive, a two-lane road, in the City of Lynchburg.  Elena's bus approached from the north and stopped to allow her to board.  The driver activated the bus' flashing red lights and safety stop sign and extended its safety gate, and Elena began to cross the road in front of the gate.  When she was two or three feet east of the center line of the road and several feet from the front of the bus, a car struck and injured her.

The car was operated by David Demoss, and Demoss' liability for Elena's injuries is stipulated.  Demoss is also liable in damages to Elena's parents, Gary and Josephine Stern, for the expense of medical treatment provided to Elena to treat her bodily injuries.

At the time of the accident, Demoss was the named insured under an automobile liability insurance policy issued by Cincinnati, which provided limits of $25,000 per person.  Elena, as a resident relative of her parents' household, was insured under the underinsured motorist provisions of a policy issued to her parents by State Farm.  This policy provided limits of $100,000 per person.  The School Board of the City of Lynchburg, the owner and operator of the bus, was the named insured under a vehicle liability insurance policy issued by Graphic Arts.  This

policy covered the bus and provided underinsured motorist coverage to persons defined as insureds under the policy in the amount of $1,000,000.

The Graphic Arts policy defines "Insured" to include, <u>inter alia</u>, those who are injured while "occupying" a covered vehicle. The policy defines "Occupying" as "in, upon, getting in, on, out or off." The Virginia uninsured motorist statute, Code § 38.2-2206, provides that there is coverage for an individual who "uses," with the expressed or implied consent of the named insured, the motor vehicle to which the policy applies.

The district court concluded that Elena was neither "occupying" nor "using" the bus at the time of the accident and, therefore, was not entitled to underinsured motorist coverage under the liability policy issued by Graphic Arts.

We accepted for consideration the following questions of law certified to us by the Fourth Circuit:

1.   Was [Elena] "occupying" the school bus, as that term is defined in the Graphic Arts policy, when she was injured?

2.   Was [Elena] "using" the school bus, as that term is defined in Virginia Code Ann. § 38.2-2206, when she was injured?

III

We begin with the first certified question which requires us to look to the Graphic Arts policy. When the language in an insurance policy is clear and unambiguous, courts do not employ rules of construction; rather, they give the language its plain

- 3 -

and ordinary meaning and enforce the policy as written. Virginia Farm Bureau Mut. Ins. Co. v. Hodges, 238 Va. 692, 696, 385 S.E.2d 612, 614 (1989); United Services Auto. Assoc. v. Webb, 235 Va. 655, 657, 369 S.E.2d 196, 198 (1988); Atlas Underwriters, Ltd. v. Meredith-Burda, Inc., 231 Va. 255, 259, 343 S.E.2d 65, 68 (1986). We think the language in the Graphic Arts policy is clear and unambiguous.

The policy defines "occupying" as "in, upon, getting in, on, out or off." The Sterns concede that Elena was not "in" or "upon" the school bus and that she was not "getting out or off" the bus. They contend, however, that Elena was "getting in [or] getting on" the bus. We do not agree.

The terms "getting in" and "getting on" a vehicle must be read and interpreted in relation to "occupying," the word defined in the policy. See Casualty Company v. Bristow, 207 Va. 381, 384-85, 150 S.E.2d 125, 128 (1966). The word "occupying" denotes a physical presence in or on a place or object. Thus, when the terms "getting in" and "getting on" are read in relation to "occupying" a school bus, and when the terms are given their plain and ordinary meanings, they require a close proximity to the bus.

We do not think that Elena, who was near the center line of the road when she was struck, was in such close proximity to the school bus. She was merely approaching the bus, and we cannot say that she was getting in or on the bus, as contemplated in the

Graphic Arts policy.  Therefore, we answer the first certified question in the negative.

IV

To answer the second certified question, we look to the uninsured motorist statute, Code § 38.2-2206.  The term

"Insured," as defined by Code § 38.2-2206,
means the named insured and, while resident of the same household, the spouse of the named insured, and relatives of either, while in a motor vehicle or otherwise, and <u>any person who uses the motor vehicle to which the policy applies</u>, with the expressed or implied consent of the named insured, and a guest in the motor vehicle to which the policy applies.

(Emphasis added.)[*]  We must determine, therefore, whether Elena was "using" the school bus at the time of the accident.

Code § 38.2-2206 recognizes two classes of insureds to each of which accrues different benefits.  Insureds of the first class are the named insured and, while residents of the same household, the spouse of the named insured and relatives of either.  Such insureds are entitled to coverage "while in a motor vehicle or otherwise," even if injured as a pedestrian.  <u>Insurance Company</u> v. <u>Perry</u>, 204 Va. 833, 836, 134 S.E.2d 418, 420 (1964) (decided under predecessor statute).

Insureds of the second class are guest passengers in or permissive operators of the motor vehicle to which the policy applies.  <u>Id</u>. at 837, 134 S.E.2d at 420.  Such insureds'

_____

[*]The definition of "insured" was amended effective July 1, 1995, to include wards or foster children of either the named insured or the named insured's spouse.  Acts 1995, c. 476.

- 5 -

entitlement to coverage is more narrow than that of insureds of the first class because insureds of the second class are "`tied to and limited to actual occupancy'" of a particular motor vehicle. Cunningham v. Ins. Co. of N. America, 213 Va. 72, 76, 189 S.E.2d 832, 835 (1972) (quoting Sturdy v. Allied Mutual Ins. Co., 457 P.2d 34, 40 (Kan. 1969)).

In arguing that Elena was "using" the school bus at the time of the accident, the Sterns rely upon Great American Insurance Co. v. Cassell, 239 Va. 421, 422-23, 389 S.E.2d 476, 476-77 (1990). In Cassell, a fire fighter, while standing about 20 to 25 feet from his fire truck, was struck and killed by an uninsured motorist. The truck had transported the fire fighter to the scene of the fire and had been parked in such a way as to control traffic and to protect the fire fighters. The fire truck had brought water, hoses, tools, and other equipment to the scene. Thus, the truck and its equipment were integral parts of the mission which had placed the fire fighter in the street; i.e., the extinguishment of the fire, and the mission had not been completed when the accident occurred. Under these facts, we held that the fire fighter was using the fire truck, within the meaning of the uninsured motorist statute, when he was struck and killed. Id. at 424, 389 S.E.2d at 477.

We think the Sterns' reliance upon Cassell is misplaced. In Cassell, the fire fighter began to use the fire truck by riding in or on it to the scene of the fire. At the scene, the fire

- 6 -

fighter continued to use the truck and its equipment to extinguish the fire and to control traffic.  Clearly, he was using the truck when the accident occurred.

In the present case, on the other hand, Elena had made no such use of the school bus.  She had not been a passenger in the bus, and, although the school bus was utilized by its driver to create a safety zone for Elena to cross the street, the safety measures did not constitute a use of the bus by Elena.

We think the present case is controlled by our holdings in Perry and United States Fire Ins. Co. v. Parker, 250 Va. 374, 463 S.E.2d 464 (1995).

In Perry, we concluded that a police officer, who was engaged in serving a warrant, was not using his police cruiser at the time of the accident because, when he was struck by an uninsured motorist, he had exited the vehicle, placed its keys in his pocket, and walked 164 feet from it.  204 Va. at 838, 134 S.E.2d at 421.  In Parker, we held that a landscape worker, who had driven the insured pickup truck to the area where the accident occurred, was not using the vehicle at the time of the accident because, when she was struck by an uninsured motorist, she was standing 12 to 15 feet from the vehicle and performing landscaping duties.  She was not "utilizing the truck as a vehicle" when struck.  250 Va. at 378, 463 S.E.2d at 466.

In the present case, under the narrow coverage afforded insureds of the second class, Elena clearly was not utilizing the

bus as a vehicle because she was not yet a passenger of the school bus and, therefore, was not using the bus, within the meaning of Code § 38.2-2206, when she was injured. Consequently, we hold that the Graphic Arts policy does not provide underinsurance coverage to the Sterns, and we answer the second certified question in the negative.

<u>First Certified Question Answered in the Negative</u>.
<u>Second Certified Question Answered in the Negative</u>.

JUSTICE HASSELL, with whom JUSTICE LACY and JUSTICE KEENAN join, dissenting.

I write separately because I believe that Elena Stern was "getting on" the school bus as that term is set forth in the Graphic Arts policy of insurance.

The Graphic Arts policy of insurance defines "occupying" as "in, upon, getting in, on, out or off." As the majority points out, Elena was waiting for the public school bus at her designated bus stop when the bus approached from the north and stopped, allowing her to board. The bus driver activated the bus' flashing red lights and safety stop sign and extended the bus' safety gate. Elena began to cross the road in front of the gate. She was several feet from the front of the bus when a car struck her. My experiences, as well as those of thousands of parents throughout this Commonwealth who accompany children to bus stops daily, lead me to the inescapable conclusion that, based upon the aforementioned facts, Elena clearly was getting on the bus when she was injured.

- 8 -

Additionally, contrary to the majority's holding, I believe that Elena was using the bus within the intendment of Code § 38.2-2206. The school bus driver had stopped the bus for the sole purpose of allowing the children to get onto the bus, and, as the majority admits, the driver activated the bus' flashing red lights and safety stop sign, and extended its safety gate. The majority also admits that after the driver had activated the bus' safety features, Elena began to cross the road "in front of the gate." The majority's own factual summary indicates to me that Elena was, at the very least, using the bus' safety devices. The sole purpose of such devices is to protect school children. Therefore, I am at a loss to understand the majority's conclusion that "the safety measures did not constitute a use of the bus by Elena."