## CIRCUIT COURT OF AMHERST COUNTY

Patrick James Mullen

v.

Northern Neck
Insurance Co.

September 10, 1997

Case No. CL 4896

BY JUDGE J. MICHAEL GAMBLE

I have reviewed the pleadings, stipulation, exhibits, and briefs filed in the above case. Accordingly, I am writing this decision to rule in this case. Upon consideration, I rule in favor of the defendant, and the warrant in debt of the plaintiff is dismissed. My reasons are set forth below.

In October 1996, the plaintiff lived in a mobile home in Amherst County, Virginia. The plaintiff also had a storage shed on his lot in which he kept paintball sporting equipment. The plaintiff was insured by a mobile homeowners policy issued by Northern Neck Insurance Company. A copy of this policy has been filed in the court file and marked Exhibit A.

On October 20, 1996, the paintball equipment was stolen from the storage shed of the plaintiff. This was reported to Northern Neck. A list of stolen items was submitted to the adjustor. This list is filed as Exhibit B. Additionally, an inventory, filed as Exhibit C, was prepared.

The plaintiff claimed a total loss of $6,980.00. Included in this loss were two tournament level automag paint guns valued at $2,400.00 and $850.00 respectively. The insurance policy issued by Northern Neck established a recovery limit of $500.00 on "guns." Thus, Northern Neck did not allow the full value of the paint guns that were stolen. Only the $500.00 policy limit for guns was applied. Thus, Northern Neck issued a check in the amount of $4,230.00 to the plaintiff. The plaintiff declined to accept the check,

contending that he should be paid $6,730.00, the full amount claimed less the $250.00 deductible.

The issue in this case is the meaning of the word "guns" in the insurance policy issued by Northern Neck. The plaintiff maintains that the term "guns" under the policy means firearms. The defendant, to the contrary, argues for the more expansive definition of any device powered by an explosive force that is designed to throw or drive projectiles over a relatively flat trajectory.

It is, of course, the basic law of construction of insurance contracts that the language of these contracts be given their plain and ordinary meaning. *Stern v. Cincinnati Ins. Co.*, 252 Va. 307, 310, 477 S.E.2d 517 (1996). Additionally, the Court is not free to rewrite an insurance policy contract and must apply the terms of the contract made the parties. *Graphic Arts Mutual Ins. Co. v. C. W. Warthen Co.*, 240 Va. 457, 460, 397 S.E.2d 876 (1990).

The defendant cites *Webster's Third New International Dictionary* (1976) for the definition of gun as follows:

> 1 a: a piece of ordnance on a carriage or other mounting for throwing projectiles by the force of some explosive (as gunpowder) usu. with high muzzle velocity and with a comparatively flat trajectory and consisting of a tube or barrel closed at one end where the projectile is placed in front of the explosive charge to be ignited . . . b: a portable firearm (as a rifle, shotgun, carbine, pistol) . . . c: a device (as an air rifle or set gun) . . .

Likewise, the *American College Dictionary* (Random House 1967) defines gun as follows:

> 1. a metallic tube, with its stock or carriage and attachments, from which heavy missiles are thrown by the force of gunpowder, etc. . . .
> 4. U.S. *Colloq.* a pistol or revolver . . . 5. any similar device for projecting something: an air gun, cement gun. . .

In summary, the term gun is defined as more than a lethal weapon such as a firearm. It appears to generally be a device with a metallic tube from which missiles are thrown by some force. Both the American College Dictionary and Webster's include in this definition an air gun. The literature on paintball guns shows and describes these guns as having a barrel from which a projectile (paintballs) are ejected by an explosive force produced by carbon dioxide, nitrogen, or compressed air. These devices appear to look like

436

firearms in the pictures contained in the trade magazines admitted as Exhibit D.

Thus, the Court must find that the ordinary meaning of the term gun is more inclusive than merely a firearm or lethal weapon, but includes other devices from which projectiles are fired through a barrel as a result of an explosive device. Accordingly, I rule that the term guns under the policy issued by the defendant includes paintball guns. Thus, the $500.00 limitation on coverage applies.