# CIRCUIT COURT OF ROCKINGHAM COUNTY

Rockingham Mutual Ins. Co.

v.

Katherine MacHardy,
Carroll Shifflett,
and State Farm
Mut. Auto. Ins. Co.

April 6, 1999

Case No. (Chancery) 16923

BY JUDGE JOHN J. MCGRATH, JR.

This declaratory judgment action was brought by Rockingham Mutual Insurance Company (hereinafter "Rockingham Mutual") requesting a declaration from the Court that they do not have a duty to defend nor to indemnify the defendant, Carroll Shifflett, under a homeowner's insurance policy that Rockingham Mutual had issued to Shifflett and which was in full force and effect on February 14, 1998. In addition to Mr. Shifflett, the homeowner and policyholder and alleged tortfeasor, Rockingham Mutual named as defendants Katherine MacHardy, a neighbor of Mr. Shifflett, who has filed a tort action against Mr. Shifflett for personal injuries suffered on February 14, 1998, and State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"), which had issued a policy to Mr. Shifflett covering the automobile which figures prominently in this litigation. A full day *ore tenus* hearing was held on January 29, 1999, and all parties have submitted extensive pre-trial and post-trial briefs.

## I. *Facts*

Although extensive evidence has been taken, there is little concerning the facts which are actually in dispute.

On February 14, 1998, which was a Saturday, Mr. Shifflett returned home from work at approximately 11:30 a.m. Intending to do a repair to a rear leaf spring of his 1967 Camaro, Mr. Shifflett pulled the Camaro into his one-car garage, which measured approximately 12 by 24 feet and which was attached to his home. Because the weather was cold and the garage was unheated, Mr. Shifflett started a Kerosun kerosene heater in the garage to warm the garage up for the repair work which he intended to do. Mr. Shifflett did not open the garage door or window to vent the garage.

At or about that time, a friend of Mr. Shifflett drove by in a pickup truck and delivered to Mr. Shifflett a tank of acetylene gas, a tank of oxygen, and welding equipment. These tanks and the welding gear were then placed into the garage by Mr. Shifflett. Also at this time located in the garage were two or three bales of straw or hay, an approximately three gallon can of gasoline, and a lawn mower and a weedeater containing gasoline and/or oil mixtures. Also in the garage there were cans and/or jugs of paint, paint thinner, one large propane tank (type used for barbecue grills), and a number of smaller cans of propane gas (used for hand-held soldering guns or blow torches).

After Mr. Shifflett had completed his lunch, another friend of his named David Kyger came by to give Mr. Shifflett a hand in changing the leaf springs on his Camaro. Apparently some time after lunch, Mr. Shifflett and Mr. Kyger went into the garage and jacked up the Camaro to commence replacing the driver's side rear leaf spring. Neither the window nor the garage doors were opened when the men started working in the garage. Shortly after they had commenced their repair activities, it was determined by Mr. Shifflett that the leaf spring could not be readily removed without removing the gas tank from the automobile.

At that point, he and Mr. Kyger disconnected the two gas lines which ran from the tank to the car and lowered the gas tank to the round and placed it immediately behind where they were working on the Camaro. "Within a matter of seconds" Mr. Shifflett and Mr. Kyger saw a blue flame running from the kerosene heater into the gas tank, and the gas tank promptly burst into intensive flame. Mr. Shifflett's clothing caught fire from this burst or small explosion, and he and Mr. Kyger immediately extinguished the fire on Mr. Shifflett's clothing. Mr. Kyger than started to fight the fire by using a rug or an old jacket that was lying in the garage by trying to beat the flames out. In

the meantime, Mr. Shifflett ran into his house, obtained a fire extinguisher, ran back to the garage, and sprayed the fire extinguisher on the fire. However, as the fire extinguisher emptied, the conflagration continued to spread and roar throughout the garage and into Mr. Shifflett's attached home.

At that point, Mr. Shifflett and Mr. Kyger retreated to the backyard and obtained buckets of water and a water hose and started to throw and spray water into the fire, but they were not able to re-enter the building because of smoke and the intense heat. As the fire raged in the garage, a number of people heard small "pops" or explosions which were believed to be paint cans, paint thinner cans, and/or small propane cylinders exploding from the heat.

Shortly after the start of the fire, either Mr. Shifflett's girlfriend or Mrs. MacHardy's husband called 911 and requested assistance from the fire department. Although there is some dispute in the evidence, it is conceded that this fire was roaring for at least ten and possibly as many as twenty minutes before the incident which gives rise to this litigation occurred.

Mrs. MacHardy, Mr. Shifflett's next door neighbor, who was in her home heard a small explosion and looked out and saw her neighbor's garage on fire and smoke pouring out of it. She ran into her yard and confirmed that Mr. Shifflett's garage and house were in flame. After she saw this, she ran back into the house and told her husband to call 911 and get the fire department on the phone. At that point, she ran back out into her yard again and went over to a fence that adjoined Mr. Shifflett's property, where Mr. Shifflett was busy trying to move his dogs from their pen so that they would not be overcome by smoke or heat. Mrs. MacHardy put her arm around Mr. Shifflett and made a neighborly inquiry as to whether everyone was out of the house. She was assured by Mr. Shifflett that everyone was out of the house and that the fire department was apparently on their way.

After this brief conversation at the fenceline, which conversation took place at a location approximately one hundred feet from the closest corner of the garage where the conflagration was going on, Mrs. MacHardy then walked back towards the center of her yard and began to observe the fire which had caught a number of her trees on fire, and she was debating whether she needed to evacuate her children from her home for fear that the fire would spread from the trees to her roof. While Mrs. MacHardy was standing towards the middle of her backyard, there was a thundering explosion which was described by witnesses as an explosion that "rocked the earth."

Simultaneously with this large explosion, a fireball was blown out of the garage, arched through the air, and landed directly upon Mrs. MacHardy, who was approximately seventy-five feet from the closest corner of Mr. Shifflett's

garage. Her husband ran to her aid, and other individuals assisted in putting the fire out which had engulfed her entire body. Shortly thereafter, Mrs. MacHardy was removed by ambulance from the scene and suffered extensive and serious burns over most of her body.

Ultimately, it was determined by the fire investigators that the immediate cause of Mrs. MacHardy's injury was the acetylene tank which had been brought into Mr. Shifflett's garage and apparently exploded. The tank flew in the opposite direction of Mrs. MacHardy's yard for some thirty to fifty feet away from the garage, and the fireball which consisted of explosive liquid gases apparently was projected in an arc in the opposite direction into Mrs. MacHardy's yard.

Some time later, Mrs. MacHardy filed a Motion for Judgment against Mr. Shifflett alleging negligence on his part and praying for $2,000,000.00 in damages. The gravamen of Mrs. MacHardy's Motion for Judgment is contained in Paragraph (8) of this pleading, which reads as follows:

8. The fire which caused the injuries to the Plaintiff was proximately caused by the negligence of the Defendant. Said negligence includes, but is not limited to, the following acts and omissions: placing an open container of gasoline in the vicinity of a burning kerosene heater, which the Defendant knew or should have known was likely to cause gasoline fumes to ignite; and/or failure to close or cover the gasoline tank in order to prevent the escape of gasoline fumes into the garage; and/or failure to extinguish the kerosene heater after the gasoline tank had been removed; and/or failure to adequately ventilate the garage after the gasoline tank had been removed; and/or failure to take the gasoline tank outside after it had been removed from the automobile; and/or releasing gasoline fumes in a confined space in which were stored other highly flammable items; and/or storage of propane gas in an unreasonable manner or location; and/or disregarding safety warnings on the propane tank(s); and/or disregarding safety warnings on the acetylene tank; and/or failure to warn the Plaintiff, whom he saw standing in her backyard, that there were items in the garage such as acetylene, which he knew or should have known were likely to explode because of the fire.

Rockingham Mutual has disclaimed any responsibility to provide a defense or indemnification of Mr. Shifflett under the homeowner's policy. The

basis of Rockingham Mutual's disclaimer is an exclusion in their policy which provides:

> Coverage E - "Personal Liability and Coverage F" Medical Payments to Others do not apply to bodily injury or property damage ... .
>
> E. Arising out of: (1) the ownership, maintenance, use, loading, or unloading of motor vehicles or all other motorized land conveyances, including trailers owned or operated by or rented or loaned to an insured ... .

## II. *Positions of the Parties*

All of the parties concede that there is no direct precedent in Virginia dealing with the factual situation presented in this case. Rockingham Mutual contends that unambiguous exclusion provisions in homeowner's liability insurance policies are enforced and that the exclusion in its policy relating to injuries "arising out of" the maintenance of an automobile are unambiguous on their face and that the fire which was the cause of Mrs. MacHardy's injuries "originated from, had its origin in, grew out of, and/or flowed from the maintenance" of a vehicle. Secondly, Rockingham Mutual contends that this standard exclusion provision found in homeowner's policies is a mirror image of the inclusion provision found in automobile insurance policies providing for coverage for personal injuries arising out of the maintenance, use, or ownership of an automobile. Rockingham Mutual argues that because State Farm Insurance has tendered a defense and has agreed to indemnify Mr. Shifflett under his automobile liability policy, this means, *ipso facto*, that the writer of the homeowner's insurance coverage is not liable.

Defendant State Farm takes the position that the Virginia courts should adopt the concurrent negligence theory which has been utilized in a number of other states and in which it is held that both an automobile liability policy and a homeowner's liability policy provide concurrent coverage when the plaintiff has alleged that separate and independent acts of negligence caused the fire and subsequent injuries. See, *e.g., State Farm Mut. Auto. Ins. Co. v. Partridge,* 10 Cal. 3d 94, 109 Cal. Rptr. 811, 514 P.2d 123 (1973); *Waseca Mut. Ins. Co. v. Noska,* 331 N.W.2d 917 (Minn. 1983); *Jorgenson v. Auto Owners Ins. Co.,* 360 N.W.2d 397 (Minn. App. 1985); *Salem Group v. Oliver,* 248 N.J. Super. 265, 590 A.2d 1194 (Sup. Ct. N.J. 1991).

State Farm argues that in this case, the plaintiff in the underlying tort action has pleaded concurrent causes of negligence; that is, she has alleged that

the removal of the gas tank from the automobile was one cause of the resulting injury but that various other negligent acts, such as a failure to warn, failure to appropriately vent the garage in which the work was being done, and the storage of highly flammable chemicals and other materials in close proximity to an open kerosene flame contributed to the ultimate injury to the plaintiff, and thus both the homeowner's and the automobile liability policies are implicated in their coverage. State Farm further argues that the fact that they have chosen not to contest the coverage of their insured in this case is not a concession that the sole or exclusive or primary cause of the plaintiff's injuries related to the "maintenance" of the automobile in question.

Mrs. MacHardy, the plaintiff in the underlying personal injury action, argues that because State Farm Mutual is not contesting coverage in this case, it is not necessary for the court to reach the issue of whether the Virginia Supreme Court would approve of the concurrent negligence doctrine. Instead, MacHardy argues that examining the rationale of the various lines of Virginia cases which have interpreted the "arising out of" language in auto insurance policies, the court must reach the conclusion that because Mrs. MacHardy was not a passenger in nor was she performing maintenance on Mr. Shifflett's Camaro and the exploding acetylene tank was the primary cause of her injury, the automobile in question was merely a "but for" cause of the ultimate injury. Mrs. MacHardy's argument is essentially that the underlying tort action alleges a number of separate and distinct negligent acts, only one of which involves the maintenance of the automobile in question, and that the cause which resulted to the maintenance of the automobile was remote in comparison to the other causes, and therefore, the ultimate explosion did not result from the maintenance of a motor vehicle.

### III. *Legal Analysis*

First, because State Farm Mutual Insurance Company has elected not to contest the coverage of their automobile insurance policy, the coverage under that policy is not at issue in this case. Therefore, the Court does not need to reach the issue of whether the State Farm automobile policy provides coverage for Mrs. MacHardy's injuries.

Although there is a substantial body of non-Virginia case law on the issue of whether fires or explosions which occur in the course of the "maintenance" of a motor vehicle may be covered by homeowner's insurance, there is no Virginia precedent directly on point. The problem presented by the instant case is that from a common sense perspective, it is clear that "but for" the

maintenance being performed on Mr. Shifflett's Camaro, there never would have been the conflagration that consumed his garage and caused the final explosion and fireball which injured Mrs. MacHardy while she was standing in her own back yard. Similarly, the conflagration may not have occurred "but for" the presence of an open flame in an unvented garage which contained a large quantity of highly flammable substances which were able to feed the fire for ten to twenty minutes before the critical explosion. The issue thus presented is whether the car maintenance cause is either too remote in the sequence of causation or too co-mingled with other non-automobile related causes to come within the automobile exclusion clause of the Rockingham Mutual homeowner's policy.

Counsel for Mrs. MacHardy undertook an exhaustive analysis of the Virginia cases dealing with the question of when an injury "arises out" of the use of an automobile. The cases can generally be grouped as cases dealing with shootings which involve the "use" of a vehicle (*State Farm v. Powell*, 227 Va. 492 (1984); *State Farm Mut. Auto. Ins. Co. v. Rice*, 239 Va. 646 (1994); *Erie Ins. Co. v. Jones*, 248 Va. 437 (1994); *Travelers Ins. Co. v. La Clair*, 250 Va. 368 (1995); and *Texie v. State Farm Mut. Ins. Co.*, 251 Va. 390 (1996)); and cases in which the injured party was located near a vehicle when an injury was incurred (*Great American Ins. Co. v. Cassell*, 239 Va. 421 (1990); *United States Fire Ins. Co. v. Parker*, 250 Va. 421 (1990); *Stern v. Cincinnati Ins. Co.*, 252 Va. 307 (1996); *Randall v. Liberty Mut. Ins. Co.*, 255 Va. 62 (1998); *Edwards v. GEICO*, 256 Va. 128 (1998); *Newman v. Erie Ins. Exch.*, 256 Va. 501 (1998)).

In all of these cases, it can be fairly said that "but for" the involvement of a vehicle, the accident in question would not have occurred. The mere "but for" causation, however, was not a sufficient basis for the Virginia Supreme Court to conclude that the injury was attributable to the use of a motor vehicle. In *Erie Ins. Co. v. Jones*, 248 Va. 437, 441 (1994), the Supreme Court specifically rejected the "but for" rationale citing the holding of the Supreme Court of Ohio in *Kish v. Central Nat'l Ins. Group of Omaha*, 424 N.E.2d 288 (Ohio 1981), in which the Supreme Court of Ohio stated:

A "but for" analysis is inappropriate to determine whether recovery should be allowed under uninsured motorist provisions of the [policies]. The relevant inquiry is whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle. The application of this standard to the instant facts leads us to conclude that the intentional,

criminal act of the murderer was an intervening cause of injury unrelated to the use of the vehicle.

*Id.* at 294.

The issue here is whether the maintenance on the Camaro was more than a mere coincident or a "but for" cause of the ensuing injuries to Mrs. MacHardy. Although not necessarily dispositive of the issues, the Virginia cases seem to be based upon the rationale that coverage is largely dependent on the relationship between the injured party and the automobile whose coverage is at issue. Thus, the Supreme Court stated in *State Farm Mut. Ins. Co. v. Powell*, 227 Va. 492, 501 (1984):

> [C]onsideration must be given to what the injured person was doing when he was injured, as well as his purpose and intent, in determining whether that person was in such a position in relation to the vehicle to be injured in its "use."

The evidence in this case clearly established that Mrs. MacHardy had no relationship whatsoever to the automobile in question. She was, in fact, standing in her yard watching her neighbor's garage and house be consumed in flame when the explosion occurred.

A nearly exhaustive review of the non-Virginia cases which deal with fires and explosions which occur in the course of people performing maintenance on a vehicle disclose certain general principles which have been adopted by most of the courts in analyzing these problems. First, when the *source of ignition* is either the car itself (*e.g.*, priming carburetor with open can of gas) or a tool being used on the vehicle (*e.g.*, cutting torch being used to loosen nuts, etc.), the courts generally hold that an ensuing explosion or fire arose out of the maintenance of the automobile. See, *e.g.*, *Alabama Farm Bureau Mut. Cas. Co. v. Tubbs*, 304 So.2d 589 (Ala. 1974) (using torch on bumper near gas tank); *Broadway v. Great American Ins. Co.*, 465 So.2d 1124 (Ala. 1985) (explosion while priming carburetor); *Holliman v. MFA Mut. Ins. Co.*, 711 S.W.2d 159 (Ark. 1986) (explosion while priming carburetor); *Hollis v. St. Paul Fire and Marine Ins. Co.*, 416 S.E.2d 827 (Ct. App. Ga. 1992) (explosion while priming carburetor); *Krempl v. Uniguard Ins. Co.*, 850 P.2d 533 (Wash. App. DWI 1993) (explosion of jury-rigged gas tank injuring one of individuals working on car); *North Star Mut. Ins. Co. v. Carlson*, 442 N.W.2d 848 (1989) (victim part of group working on truck when gas exploded while priming carburetor); *State Farm Fire and Cas. v. Solas*, 222 Cal. App.

3d 255 (1990) (injured party welding tire rim with torch when tire exploded); *Volkswagen Ins. Co. v. Nguyen*, 405 So. 2d 190 (Ct. App. Fla. 1981) (bystander who was part of crew injured when gas exploded while priming carburetor).

On the other hand, in most cases in which the source of ignition is not the vehicle itself or is not a heat source being used on the vehicle (*e.g.*, a blow torch or welding torch), the courts have generally held that the ensuing injuries from fire or explosion either do not arise out of the maintenance of a vehicle or that the vehicle maintenance is only a "concurring cause" of the subsequent injury. For example, a case somewhat analogous to the instant case is *Auto-Owners Ins. Co. v. Citizens Ins. Co. of Am.*, 473 N.W.2d 753 (Mich. App. 1991). In that case, a car was brought into a garage, and the gas tank was removed. The fumes from the tank were ignited by a pilot light on a gas hot water heater which was located in the garage. The Michigan Appeals Court rejected the argument that the ensuing property damage arose out of the maintenance of the car stating:

> Although the water heater may be a tool used to furnish hot water for maintaining vehicles, in this case there was no connection between the hot water heater and the maintenance that this vehicle was undergoing.
>
> Auto-Owners urges us to rule that there is a sufficient causal connection established between the maintenance and damage if the maintenance of a motor vehicle is one of the causes, even though there are other causes … . We instead hold that there must be a close and direct connection between the maintenance the vehicle was undergoing and the source of the ignition … .
>
> We conclude that the relationship between the maintenance and the damage in this case failed to rise above the level of "incidental, fortuitous or but for."

*Id.* at pp. 754-755.

Similarly, in *Almayor v. State Farm Fire & Cas. Co.*, 613 So. 2d 526 (Dist. Ct. of App. Fla. 1993), a homeowner drained gas from his gas tank into a bucket in preparation to doing repairs to his car. A neighbor came out of the apartment building holding a lit cigarette which ignited the gas fumes. In holding that this misadventure was covered by a homeowner's insurance policy, the Appellate Court stated:

We reverse on the ground that the accident "arose out of" Ramirez's allegedly negligent use of flammable material, not the ownership, maintenance or use of the motor vehicle under repair. Indeed, the car had little, if anything, to do with the fire at all. It was merely the coincidental and legally remote source of a component, the gasoline, which was itself harmless until acted upon the insured's negligence.

*Id.* at p. 527.

In reviewing the entire body of case law cited to it, the Court was not able to find any case in which the person injured was a stranger to the automobile maintenance activity *and* where the source of ignition was wholly external to the vehicle and the tools being used on the vehicle which held that homeowner's automobile exclusion applied. This is the precise issue we have in this case. Mrs. MacHardy was a stranger to the entire maintenance effort. The source of ignition had nothing to do with the car; it was an open flame kerosene heater being used in the garage. Moreover, the actual ignition of the Camaro's gas tank is not what injured Mrs. MacHardy. The gas tank started a fire, which raged from ten to twenty minutes consuming a number of highly combustible items stored in Mr. Shifflett's garage before the heat became hot enough to explode the acetylene tank which was the direct cause of Mrs. MacHardy's injuries.

It is well established in Virginia jurisprudence that in construing "exclusions" from insurance policies, the insurance carrier has the burden of proving the application of the exclusions. See, *e.g., Johnson v. Ins. Co. of North America*, 232 Va. 340 (1986); *White v. State Farm Mut. Auto. Ins. Co.*, 208 Va. 394 (1967). Similarly, in construing exclusions, the language of the exclusion will be construed most strongly against the insurance carrier. See, *e.g., St. Paul's Ins. Co. v. Nusbaum & Co.*, 227 Va. 407 (1984).

Under the facts of this case, Rockingham Mutual has not carried its burden of proving the applicability of the homeowner's exclusion for personal injuries arising from the maintenance of an automobile. Although the automobile maintenance was clearly part of a long chain of causation "but for" which there would not have been the ultimate injury, the fact that Mrs. MacHardy was a complete stranger to the repair effort and that there were many other non-automotive causes which contributed more significantly and more directly to the ultimate explosion, the homeowner's coverage is not excluded on these facts.

## IV. *Conclusion*

Although State Farm Mutual Insurance Company has argued for the Court to adopt the concurrent negligence doctrine that has been adopted in a number of states (see, *e.g.*, *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917 (Minn. 1983); *Jorgensen v. Auto Owners Ins. Co.*, 360 N.W.2d 397 (Minn. App. 1985); *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 109 Cal. Rptr. 811, 514 P.2d 123 (1973)), that precise issue is not before the Court. Although the Court has found helpful the mode of analysis employed in many of the concurrent negligence cases, the fact that State Farm has not asserted that it does not have coverage in this case renders moot the issue of whether both an auto policy and a homeowner's policy can provide coverage for the same injury.

Therefore, the relief requested in the declaratory judgment action is denied.

The Clerk is directed to send attested copies of this Order to Donald D. Litten, Esq., and Melissa G. Ledbetter, Esq., counsel for Defendant, Rockingham Mutual Insurance Company; Holmes C. Harrison, Esq., counsel for Plaintiff; Franklin R. Blatt, Esq., counsel for Defendant, Carroll Shifflett; and Daniel L. Fitch, Esq., counsel for Defendant, State Farm.