Present:  All the Justices

AMANDA LELIA WAGONER, A MINOR, BY
HER NEXT FRIEND, STACY WAGONER, ET AL.

v.  Record No. 972621     OPINION BY JUSTICE ELIZABETH B. LACY
                                   September 18, 1998
TERESA SCOTT BENSON, ET AL.

FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

Amanda Lelia Wagoner, by her next friend, filed a motion for judgment against the Henry County School Board (the School Board) and Theresa Scott Benson, a school bus driver for the School Board, for injuries sustained when she was hit by an automobile while crossing a road to board a school bus driven by Benson.  The trial court dismissed the motion for judgment, holding that the defendants were entitled to sovereign immunity under Code § 22.1-194.  We will reverse the judgment of the trial court and remand the case for further proceedings because we conclude that the accident arose out of the "loading" of the school bus as defined by the School Board's liability insurance policy and, therefore, the defendants were not entitled to sovereign immunity pursuant to Code § 22.1-194.

Just before seven o'clock in the morning on December 5, 1995, Stacy Wagoner drove her daughter Amanda to the school bus stop.  She parked the car north of the westbound lane of State Route 57.  A school bus driven by Benson approached the

bus stop in the eastbound lane of Route 57 with its headlights on. When the bus was approximately 700 feet from the bus stop, Benson turned on the flashing red safety lights and, approximately thirty feet from the stop, she extended a mechanical stop sign. When the bus reached the stop, Wagoner got out of her mother's car and began crossing the westbound lane of Route 57 toward the front of the bus. When Wagoner was approximately half-way across the westbound lane, she was struck by a car driven by Mildred V. Brown and sustained serious injuries.

Wagoner subsequently instituted this litigation.[1] The School Board and Benson filed a plea of sovereign immunity.[2] The trial court sustained the plea and dismissed the motion for judgment, concluding that sovereign immunity was not waived pursuant to Code § 22.1-194 because the School Board's liability insurance policy did not provide valid, collectible insurance for Wagoner's injuries. We awarded Wagoner an appeal.

A public school board is entitled to sovereign immunity from liability for injuries resulting from the school board's simple negligence unless that immunity is abrogated by

---

[1] Wagoner also named Brown as a defendant, but dismissed that claim following a settlement agreement.

statute. <u>Kellam v. School Bd. of the City of Norfolk</u>, 202 Va. 252, 255, 117 S.E.2d 96, 98 (1960). Code § 22.1-194 abrogates a school board's sovereign immunity to a limited degree. If the school board is an insured under a policy covering a vehicle involved in an accident, the school board is "subject to action up to, but not beyond, the limits of valid and collectible insurance in force to cover the injury complained of . . . and the defense of governmental immunity shall not be a bar to action or recovery." Code § 22.1-194.

In this case, the School Board was an insured under a motor vehicle liability policy covering the school bus involved in the accident. Whether the School Board is entitled to the defense of sovereign immunity depends upon whether its policy was "valid and collectible insurance in force to cover the injury complained of."

The relevant portion of the policy states that the insurer

> will pay all sums anyone we protect legally must pay as damages caused by an accident covered by this policy. The accident must arise out of the ownership, maintenance, use, loading or unloading of an auto we insure.

Wagoner argues that the accident in which she was injured arose out of the "loading" of the school bus, and, therefore,

---

[2] For purposes of this appeal, we need not distinguish between the availability of the sovereign immunity defense for

3

the School Board and Benson were not entitled to sovereign immunity because valid and collectible insurance was available.  We agree.

"Loading" is not defined in the liability insurance policy.  While the word "load" can be used as either a noun or a verb, it is used as a verb in this insurance policy. Webster's defines the verb "load" as putting "a load in or on" or "to place in or on a means of conveyance."  Webster's Third International Dictionary 1325 (1993).  Neither the dictionary definition nor common usage limits "loading" to a single point in time or single action.  "Loading" is a process which moves a "load" from one place to another.

In this case, loading the school bus was a function performed by the bus driver.  The loading process, that is moving the students from the road onto the bus, involved a number of steps.  Those steps, viewed from the perspective of the driver performing the process, include turning on flashing warning lights and extending the mechanical stop sign and the metal safety gate, all of which remain engaged until all students are inside or have been "loaded onto" the school bus. Under the facts of this case, the accident clearly arose during the "loading" of the school bus.

---

Benson and the School Board.

Contrary to the argument of the School Board and Benson, our decision in Stern v. Cincinnati Ins. Co., 252 Va. 307, 477 S.E.2d 517 (1996), does not require a different result. The similarity between Stern and this case is limited to the fact that both cases involve students who were injured while approaching a school bus with the intent of entering the bus. The legal issues involved in the two cases are not similar. First, Stern was not concerned with whether valid and collectible liability insurance was available to cover the injuries sustained by the student pursuant to Code § 22.1-194. Rather, the issue in Stern involved uninsured motorist coverage, specifically whether the injured student qualified as an insured under the uninsured motorist provisions of a school board's liability policy or was entitled to coverage under the provisions of the uninsured motorist statute, Code § 38.2-2206. Stern, 252 Va. at 310, 477 S.E.2d at 519. Consequently, the focus of the inquiry in Stern was the student's use of the insured vehicle, not the use of the insured vehicle by the school bus driver, as it is in this case. Furthermore, Stern addressed the interpretation of the words "using" and "occupying" in the context of uninsured motorist coverage, not the meaning of the word "loading" in the context of an automobile liability policy. Id. Thus, the holding in Stern simply is not applicable to this case.

5

In summary, we conclude that Wagoner's injuries were sustained in an accident arising out of the loading of a school bus insured by a motor vehicle liability policy in which the School Board was an insured. Because valid and collectible insurance was available to cover Wagoner's injuries, the defense of sovereign immunity does not bar an action against the School Board and Benson for recovery of damages in an amount up to the limits of the insurance policy. Code § 22.1-194.

Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings.

<u>Reversed and remanded.</u>

6