COURT OF APPEALS OF VIRGINIA

Present: Judges Friedman, Chaney and Lorish
Argued at Salem, Virginia

JAQUAN HAMILTON, AN INFANT, BY HIS MOTHER
 AND NEXT FRIEND TANISHA HAMILTON

MEMORANDUM OPINION[*] BY
v.     Record No. 0944-23-3     JUDGE LISA M. LORISH
AUGUST 27, 2024

MORRIS JACKSON, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemons, Judge

John S. Koehler (David Adam McKelvey; Timothy D. Dooley,
Guardian ad litem for the minor child; The Law Office of James
Steele, PLLC; Crandall and Katt; Dooley Law PLC, on brief), for
appellant.

Dov M. Szego; Christopher S. Dadak (Stella S. Villalobos; Wilson,
Elser, Moskowitz, Edelman & Dicker LLP; Guynn, Waddell, Carroll
& Lockaby, P.C., on brief), for appellees Durham School Services,
L.P., John Doe, and Roanoke City School Board.

No brief or argument for appellees Morris Jackson, City of
Roanoke, and Ace American Insurance Company.


After getting off his school bus, ten-year-old Jaquan Hamilton was hit by a car as he was

crossing the street. Hamilton, by his next friend, brought suit against the Roanoke City School

Board ("RCSB"); Durham School Services, L.P. ("Durham"), a transportation company that

operated the school bus under contract with the Roanoke City Public Schools ("RCPS"); the bus

driver, John Doe; and Morris Jackson, the driver of the car that hit him. RCSB and Durham

demurred and filed pleas in bar alleging that they were entitled to sovereign immunity. Hamilton

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

now appeals the decision of the Roanoke City Circuit Court to grant RCSB's and Durham's pleas in bar after finding that they were entitled to sovereign immunity.

BACKGROUND[1]

Hamilton was crossing the street after getting off his school bus in Roanoke when he was hit by a car going less than 20 miles per hour. He fractured his tibia and incurred $97,000 worth of medical expenses resulting from the accident. Hamilton filed suit by his next friend against RCSB, Durham, Doe, and Jackson.[2] He alleged in his amended complaint that these defendants' negligence or gross negligence contributed to the accident. Hamilton alleged that Durham and RCSB were directly liable because they negligently failed "to use reasonable care in the selection of bus drop off sites and procedures to keep students safe." Hamilton also alleged that Doe negligently failed "to use reasonable care in the drop off of [Hamilton] at the bus stop," and because Doe was an agent of Durham and RCSB, they were both vicariously liable for that failure.

Durham filed a demurrer and a plea in bar arguing that it was entitled to sovereign immunity as an agent of the school board and a motion craving oyer that submitted as an exhibit the agreement between itself and the RCSB as evidence of the scope of its duties and to support its claim that RCSB was responsible for selecting bus drop off sites and procedures. The contract says, "Pupils shall be taken on and discharged from the bus only at the designated stops as designated by [Roanoke City Public Schools]." The contract also requires Durham to obtain

_____

[1] When reviewing the grant of a demurrer, we "accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 164 (2022).

[2] Hamilton ultimately reached a settlement with the driver for $25,000, the maximum coverage under his insurance plan, after which he was removed from the suit.

liability insurance and requires all such policies to "name [Roanoke City Public Schools], its officers, employees, and agents as an additional insured party under all insurance coverage."

In its demurrer, Durham argued several reasons why the amended complaint failed to plead a claim of negligence against Durham, as the employer of the unidentified driver, Doe.[3] First, Durham argued that it had no duty to select the drop off sites or procedures because that was RCPS's duty under their contract. Second, Durham argued that because the complaint alleged that Hamilton was only injured "after exiting the bus and crossing the street," the accident occurred after any duty relating to operation of the bus had ended. Third, Durham argued that the complaint failed to state a claim for gross negligence, the standard that would be required if Doe was entitled to sovereign immunity. In its plea in bar, Durham argued that it was entitled to sovereign immunity because it was an agent of RCPS performing RCPS's governmental function of busing students, and thus Durham is immune from liability.

RCSB also filed a demurrer to the amended complaint, as well as a plea in bar asserting that it too was entitled to sovereign immunity. RCSB argued that Code § 22.1-194 did not abrogate its sovereign immunity because "[i]t is undisputed that the School Board is neither the owner nor operator of the school bus in question," "[n]or is the School Board otherwise an insured under a policy for a vehicle involved in an accident." RCSB also argued that even if "the School Board's self-insurance [c]overage contract somehow could apply to the school bus, that contract cannot provide coverage because the claim does not arise out of the ownership, maintenance, or use of the school bus." RCSB further contended that when a school board contracts with a third party to operate a school bus, immunity is not abrogated under Code § 22.1-195. Finally, RCSB argued that Hamilton could not proceed in name only to recover

---

[3] It appears that Hamilton never identified Doe, or served Doe with a copy of the amended complaint, and that Doe never appeared in the litigation.

uninsured/underinsured motorist ("UIM") coverage if RCSB was held immune because RCSB's coverage contract only provided UIM coverage for "Owned Autos," and "Owned Autos" were defined as "an Auto owned by the [School Board] and designed for travel on public roads."

Hamilton opposed the demurrers and pleas in bar and demanded "a trial by jury on the issues raised in the plea in bar, thus barring consideration by the court." To counter the argument that Hamilton failed to show that Durham and RCSB had a duty to keep students safe after drop-off, Hamilton pointed to 8 Va. Admin. Code § 20-70-80, the regulation governing pupil transportation, which states that "[p]upils shall be picked up and discharged only at designated school bus stops approved by the local school division except in the case of an emergency" and that "[w]hile stopped, the driver shall keep the school bus warning devices in operation to warn approaching traffic to stop and allow pupils to cross the highway safely." Hamilton also attached part of the school board's liability policy, which covered anything "caused by any accident and resulting from the ownership, maintenance or use of a covered auto designed for travel on public roads," and argued that the school board's sovereign immunity was abrogated by statute up to the extent of its insurance coverage. Hamilton identified contested factual issues relevant to the plea in bar: "[t]he issue of whether the school bus lights were on, the proximity of the bus as a cause for the collision, and the negligence of the driver" and argued that these were issues for a jury and could not be resolved on the pleadings.

The circuit court held a hearing on the demurrers and the pleas in bar, during which it heard argument from the parties but received no evidence. At the hearing, the defendants pointed to deficiencies in the amended complaint, noting that there were "no allegations as to the

use of lights" and "no allegations as to traffic."[4]  Hamilton reiterated that "on any factual things that aren't decided" he was "asking for a jury on that to the extent it's a plea in bar and not a demurrer issue, and we're not waiving that by coming before the Court without a jury."  The circuit court entered a final order following the hearing, dismissing the case with prejudice.  The circuit court concluded that RCSB and Durham were "entitled to immunity from suit for the reasons stated in their respective briefs."

Hamilton moved to suspend the judgment and filed a motion requesting clarification from the circuit court on the basis for its final order.  Hamilton noted that the defendants had raised "various procedural bars" and made "multiple arguments in support of their claims of immunity" and that the circuit court's order had not specified the rationale for its decision.  Hamilton also filed objections to the circuit court's order, arguing that RCSB and Durham are not immune "because of the statutory waiver of immunity that applies when insurance is purchased" and that even if they are immune, Hamilton should "be able to proceed against them in name only pursuant to Virginia Code § 38.2-2206."

The circuit court entered an order suspending the final order for 30 days and later entered an order clarifying its earlier final order.  In the new order, the circuit court again found that the defendants were all entitled to immunity from suit and this time stated that it had granted each defendant's plea in bar.  It added that it was adopting "the legal rational[e] of each [d]efendant's Plea in Bar provided in their various briefs."  This dismissal order included Doe, who had not filed anything below.  Hamilton appeals.

---

[4] The defendants also called the court's attention to Hamilton's medical records, provided to the court by Hamilton, which included a statement from a bystander that said Hamilton "had just exited the school bus and was running across the street" into the "back left quarter pane of a vehicle" when he was knocked to the ground and sustained his injuries.

ANALYSIS

On appeal, Hamilton argues that the circuit court was wrong to resolve this case on a plea in bar. A plea in bar typically "asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010). "[T]he function of the plea in bar . . . is to narrow the litigation by resolving an issue that will determine whether a plaintiff may proceed to trial on a particular cause of action." *Id.* at 578. Though a plea in bar often presents a complete bar to recovery, it may also present "a bar to recovery to only some, but not all, of the plaintiff's claims." *Smith v. McLaughlin*, 289 Va. 241, 252 (2015).

The burden of proof is on the party asserting the plea in bar. *Hawthorne*, 279 Va. at 577. When a circuit court sustains a plea in bar ore tenus, this Court reviews the judgment de novo and views the allegations of the complaint in the light most favorable to the plaintiff, including all reasonable inferences that stem from it. *Smith*, 289 Va. at 251. But "we must distinguish allegations of historical fact from conclusions of law. We assume the former to be true *arguendo*, but we assume nothing about the correctness of the latter because 'we do not accept the veracity of conclusions of law camouflaged as factual allegations or inferences.'" *Patterson v. City of Danville*, 301 Va. 181, 197 (2022) (quoting *Doe ex rel. Doe v. Baker*, 299 Va. 628, 641 (2021)).

*I. The circuit court's decision that RCSB was entitled to sovereign immunity*

In general, the Commonwealth and its subsidiaries are entitled to sovereign immunity. *See Massenburg v. City of Petersburg*, 298 Va. 212, 217 (2019) ("Virginia has long recognized that local governments share in the Commonwealth's sovereign immunity." (citing *City of Richmond v. Long*, 58 Va. (17 Gratt.) 375, 379 (1867))). That said, this immunity is abrogated by statute in matters involving the transportation of pupils by a locality or school board. Code § 22.1-194 provides:

- 6 -

In case the locality or the school board is the owner, or operator through medium of a driver, of, or otherwise is the insured under the policy upon, a vehicle involved in an accident, the locality or school board shall be subject to action up to, but not beyond, the limits of valid and collectible insurance in force to cover the injury complained of or, in cases set forth in subsection D of § 22.1-190, up to but not beyond the amounts of insurance required under subsection A of § 22.1-190 and the defense of governmental immunity shall not be a bar to action or recovery.

When a vehicle involved in an accident is not owned by the locality or school board but is operated under contract with the same, "recovery may be had as provided for in § 22.1-193." Code § 22.1-195. Code § 22.1-193 provides that when school pupil or personnel suffers injury, property damage, or death "through the ownership, maintenance, use or operation of a vehicle," "it shall be sufficient, in an action for recovery upon the policy, to prove such facts and circumstances as are required to be shown in order to recover damages for death or injury to person or property caused by the negligent operation of privately owned motor vehicles in Virginia."

RCSB filed a plea in bar asserting sovereign immunity as a complete bar from suit in this case. "A plea in bar asserting sovereign immunity is akin to an affirmative defense with the defendant bearing the burden of proving the facts supporting the plea by a 'preponderance of the evidence.'" *Patterson*, 301 Va. at 196 n.8. RCSB argued below, and on appeal, that they are not subject to suit under Code § 22.1-194 because (1) they did not own the school bus, (2) Durham was the operator of the bus, and (3) RCSB had no insurance policy covering the bus. The circuit court granted RCSB's plea in bar, finding RCSB was immune from suit without explaining why, other than indicating that it adopted the reasoning in RCSB's briefing below.

Here, we address only the assignment of error that "the Circuit Court erred in sustaining the defendant's pleas in bar of sovereign immunity because . . . the School Board . . . is amenable to suit under Code § 22.1-194 as a waiver of sovereign immunity up to the limits of its

- 7 -

insurance."  RCSB has consistently argued that it has no insurance policy on the bus because the bus was owned and operated by Durham, its independent contractor, and that this lack of insurance, ownership, and operation means that the statute does not waive RCSB's sovereign immunity.  This feature distinguishes this case from *Linhart v. Lawson*, 261 Va. 30, 34 (2001), where the evidence showed that the defendant school board had insurance coverage.  There, the Supreme Court found that the circuit court had erred in granting a plea in bar against the school board on sovereign immunity grounds because Code § 22.1-194 abrogated the board's immunity under the circumstances of that case.  *Id.* at 37.

RCSB bore the burden of proving sovereign immunity below, and we find that RCSB fell short on this record.  Code § 22.1-194 abrogates sovereign immunity for school boards when they directly own and operate school buses, and when the school board is "the insured under the policy upon, a vehicle involved in an accident."  In these cases, the school board is "subject to action up to, but not beyond, the limits of valid and collectible insurance."  *Id.*  RCSB argues that Durham had the only relevant insurance policy for the school bus and that its insurance policy covered only vehicles it directly owned.

Whether RCSB is the insured under any policy is a legal question, and one we review de novo.  *See Bailey v. Loudoun Cnty. Sheriff's Office*, 288 Va. 159, 169 (2014) ("We review issues of contract interpretation de novo.").  The limited record before us includes a small portion of the insurance policy covering Durham and Doe, along with the contract between Durham and RCPS.  Also part of the record is a small portion of an insurance coverage contract from VACORP, the "Business Auto Coverage" section, insuring RCSB against "damages because of Bodily Injury or Property Damage to which this coverage applies, caused by any Accident and resulting from the ownership, maintenance, or use of a Covered Auto designed for travel on public roads occurring during the Contract Period," and a "Declarations Page" for "Business Auto," setting out different

coverage and liability limits depending on whether the vehicle was an owned auto, hired auto, non-owned auto, or covered auto. For example, the policy appears to provide coverage for "Auto Medical Payments per person" for "Any Covered Auto" of up to $10,000, and a liability limit per accident of $1,000,000 for "All Non-Owned Autos." Another one-page fragment of the contract appears to define "Owned Auto" as an "Auto owned by the Member and designed for travel on public roads." This fragment does not define "Non-Owned Auto," "Hired Auto," or "Covered Auto."

We begin by noting that RCSB cannot receive state education funds unless it provides evidence that every school bus (whether "owned or operated by" the school board or "owned or operated by any person under contract with" the school board) is covered by a policy of liability and property damage insurance. Code §§ 22.1-188, -189, -190. Insurance is not required where a school board has received a certificate of self-insurance, as set out by Code § 22.1-190(D). In a pleading before the circuit court, RCSB alleged that it was "self-insured through VACORP," but that its insurance through VACORP was limited only to "Owned Autos." Hamilton, on the other hand, argued that the school's policy covered anything "caused by any accident and resulting from the ownership, maintenance or use of a covered auto designed for travel on public roads. . . ."

As explained above, only fragments of the various contracts were part of the record below. The portion of RCSB's contract with VACORP that is part of the record uses many terms that appear to have been defined elsewhere, and we lack those definitions. For example, we have no definition for "Covered Auto," or "Non-Owned Auto," and the small portion of the contract we do have seems to suggest RCSB has some coverage for accidents involving these undefined categories of vehicles. Of course, the contract could define "Non-Owned Auto" in many ways, but absent an indication otherwise, the plain language at least suggests that RCSB's

- 9 -

self-insurance included some coverage for vehicles other than the ones it owned and operated directly.

More significant, however, is that Code § 22.1-194 provides that "[i]n case the locality or the school board . . . *otherwise is the insured under* the policy upon, a vehicle involved in an accident, the locality or school board shall be subject to action up to, but not beyond, the limits of valid and collectible insurance . . . ." Here, the contract between RCPS and Durham explicitly required Durham to obtain insurance coverage for the school buses it operated, and to ensure that RCPS was named as an insured party under those contracts. Thus, the evidence before the court below was that RCPS contracted with Durham to be a named insured party under Durham's insurance policy, and nothing in the fragment of that actual policy entered into evidence points to the contrary.

Because RCSB raised a plea in bar of sovereign immunity, RCSB bore the burden to prove that sovereign immunity applied in this case to exempt it from suit. We find that RCSB failed to meet this burden because insufficient evidence was presented on the record below to allow a determination as a matter of law that Code § 22.1-194 did not abrogate RCSB's sovereign immunity up to the limit in any applicable policy.

Of course, the mere fact that RCSB may be the insured under a policy involving the school bus in question does not answer the next question of whether Hamilton's injury was due to the "ownership, maintenance, or use or operation of a vehicle," as outlined in Code § 22.1-193, and as appears to be contemplated in the fragments of the available insurance policies. RCSB argues that the amended complaint alleges that Hamilton was injured after exiting the bus and while crossing the street and that crossing the street is unrelated to the "use or operation" of the school bus.

As our Supreme Court has outlined, "[c]ertain basic concepts uniformly are applied to the 'ownership, maintenance, or use' provisions of automobile liability policies." *State Farm Mut. Auto. Ins. Co. v. Powell*, 227 Va. 492, 500 (1984). For example, "ownership, maintenance, or use of the vehicle need not be the direct, proximate cause of the injury in the strict legal sense," but "there must be a causal relationship between the accident and employment of the insured motor vehicle as a vehicle." *Id.* Additionally, "consideration must be given to what the injured person was doing when he was injured, as well as his purpose and intent, in determining whether that person was in such position in relation to the vehicle to be injured in its 'use.'" *Id.* at 501.

For example, the Supreme Court later applied those considerations in the context of an accident involving a school bus, where a child was hit by a car while crossing the road to board a school bus owned and operated by the school board. *Wagoner v. Benson*, 256 Va. 260, 262 (1998). At the time of the accident, the bus's flashing red safety lights were on and the mechanical stop sign was extended. *Id.* The relevant question under that school board's liability insurance policy was whether the accident arose out of the "ownership, maintenance, use, loading or unloading" of the bus. *Id.* at 263. The Court found that the student was "loading" the bus during the accident. The loading process, the Court explained, involves "a number of steps," including "turning on flashing warning lights and extending the mechanical stop sign and the metal safety gate, all of which remain engaged until all students are inside or have 'loaded onto' the school bus." *Id.* The accident there "clearly arose" from the loading of the school bus such that the school board's insurance applied and, accordingly, the school board's sovereign immunity was abrogated. *Id.*

Without the full policies to confirm the extent of RCSB's coverage, we cannot be certain of what actions are covered. We can, however, be certain that whether the accident occurred as part of using the school bus is a fact-intensive inquiry that would have required a presentation of

evidence below.  This is all the more true because Hamilton provided few facts about the incident in his amended complaint.[5]

Given the limited factual record before us, we must reverse the court's decision to grant the plea in bar as to RCSB.  *See Our Lady of Peace, Inc. v. Morgan*, 297 Va. 832, 852 (2019) (remanding to the circuit court for a jury to resolve the fact-intensive issue of whether the alleged tortious conduct occurred during the scope of the agent's employment).  We do observe, however, that sovereign immunity can be raised at any point in civil litigation because "if sovereign immunity applies, the court is without subject matter jurisdiction to adjudicate the claim."  *Afzall v. Commonwealth*, 273 Va. 226, 230 (2007).

### II.  *The circuit court's conclusion that Durham, the privately owned company that employed Doe, was entitled to sovereign immunity*

Hamilton also argues that the circuit court erred in dismissing the case against Durham. The circuit court granted Durham's plea in bar, finding that Durham was protected by sovereign immunity as an agent performing a governmental function.  In challenging this conclusion, Hamilton assigns the following error:

> The Circuit Court erred in sustaining the defendant[s'] pleas in bar of sovereign immunity because:
>
> a. the amended complaint alleged that Doe, the driver of the bus and an employee of Durham under its contract to with the School Board, was grossly negligent, and such allegation is accepted as true for purposes of the pleas in bar;

---

[5] RCSB contends in the alternative that Hamilton pleaded insufficient facts to prove simple negligence, and argues that we can resolve this case under the right result, wrong reason doctrine by concluding that RCSB's demurrer should have been granted.  *See City of Charlottesville v. Regulus Books, LLC*, 301 Va. 170, 179 (2022).  But the rules of our Commonwealth require us to liberally construe a pleading of negligence, without requiring "particulars."  *See* Rule 3:18 ("An allegation of negligence or contributory negligence is sufficient without specifying the particulars of the negligence.").  Here, the face of the amended complaint alleges a duty of care, and it alleges that the driver was negligent.  Under our liberal pleading standard for claims of negligence, this was sufficient to survive a demurrer.

b. the School Board, and by extension Durham as its agent, is amenable to suit under Code § 22.1-194 as a waiver of sovereign immunity up to the limits of its insurance; and,

c. even if the School Board, and by extension Durham, are entitled to the protection of sovereign immunity with respect to direct liability, Hamilton should still be able to proceed against them in name only pursuant to Virginia Code § 38.2-2206, as "Immune Defendants" and against Jackson as a "Released Defendant" via the underinsured motorist coverage provided by the ACE policy and the School Board's policy under a theory of use, as stated in *Bratton v. Selective Ins. Co. of Am.*, 290 Va. 314, 331 (2015).

"An assignment of error is not a mere procedural hurdle an appellant must clear in order to proceed with the merits of an appeal. Assignments of error are the *core* of the appeal." *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 122 (2017). "Like a well-crafted pleading, assignments of error set analytical boundaries for the arguments on appeal." *Id.* at 123; *see also Yeatts v. Murray*, 249 Va. 285, 290 (1995) ("The purpose of assignments of error is to point out the errors with reasonable certainty in order to direct this court and opposing counsel to the points on which appellant intends to ask a reversal of the judgment, and to limit discussion to these points." (quoting *Harlow v. Commonwealth*, 195 Va. 269, 271 (1953))). Thus, this Court does "not consider issues touched upon by the appellant's argument but not encompassed by his assignment of error." *Banks v. Commonwealth*, 67 Va. App. 273, 289 (2017).

By including specific reasons the court allegedly erred in sustaining the plea in bar as to Durham after the word "because" in his assignment of error, Hamilton confined this Court's review to whether those identified reasons show that it was error for the court to find that Durham was entitled to sovereign immunity. This is important because Hamilton has not argued that the circuit court erred in sustaining the plea in bar because Durham is a private company

who contracted with RCSB to provide a service and not RCSB's agent or employee.  Thus, we do not consider this question.[6]

Turning to the errors that *were* assigned, the issue complained of in the first subpart of the error—that the amended complaint sufficiently alleged gross negligence and so the circuit court was wrong to sustain the plea in bar—runs into a threshold problem.  Should we agree with Hamilton that the amended complaint sufficiently alleged gross negligence, it would not lead us to the conclusion that the circuit court erred in sustaining Durham's plea in bar for sovereign immunity.  Once an agent of the Commonwealth "is deemed to be protected by sovereign immunity, he is immunized from suit for his negligence, unless the plaintiff can demonstrate gross negligence." *B. M. H. v. School Bd.*, 833 F. Supp. 560, 574 (E.D. Va. 1993) (citing *Colby v. Boyden*, 241 Va. 125, 128 (1991)).  Said another way, "an individual who has sovereign immunity is not immunized from suit." *Roach v. Botetourt Cnty. Sch. Bd.*, 757 F. Supp. 2d 591, 595 (W.D. Va. 2010) (citing *Colby*, 241 Va. at 128).  Instead, "if he is sued for his own conduct, the degree of negligence necessary to impose liability upon him is elevated from simple negligence to gross negligence." *Id.*  Because gross negligence is the standard that applies when an agent of the state *is immune*, if the amended complaint sufficiently alleged the same, it would not mean that the circuit court erred in finding that the agent of the state was immune.  Instead, if the amended complaint sufficiently alleged gross negligence, it would mean that the claim for gross negligence should continue against the defendant, who has been immunized from suit only for his simple negligence, and that the circuit court was wrong to dismiss the entire case based on immunity for negligence alone.

---

[6] In *Atkinson v. Sachno*, 261 Va. 278, 284 (2001), the Supreme Court stated, "So that no doubt will exist on that issue, we expressly hold that while some employees or agents of the Commonwealth *may* be entitled to the protection of sovereign immunity, all independent contractors are excluded from that protection."

The third subpart of the assignment of error has the same problem. The error claims that the "Circuit Court erred in sustaining the defendant's pleas in bar of sovereign immunity because *. . . even if the School Board, and by extension Durham, are entitled to the protection of sovereign immunity* with respect to direct liability, Hamilton should still be able to proceed against them in name only pursuant to Virginia Code § 38.2-2206 . . . ." (Emphasis added). Again, the error complained of here is that the circuit court erred in finding Durham was immune, and the reason provided is that "even if" Durham was immune, Hamilton still had a viable argument under Code § 38.2-2206. If we agree that Hamilton should be able to pursue recovery from the UIM policy of an immune defendant, it would not mean the circuit court was wrong in finding the defendant immune, it would mean the circuit court was wrong to dismiss the entire case.

To the extent Hamilton intended to assign error to the circuit court's dismissal of the entire case, following the decision to sustain Durham's plea in bar which argued it was covered by sovereign immunity, Hamilton failed to do so. Here, the decision to sustain the plea in bar and find that Durham was immune narrowed the litigation and effectively immunized Durham from any claim of simple negligence. We cannot equate Hamilton's specific argument that the plea in bar asserting sovereign immunity should not have been sustained with the more general argument that the case should not have been dismissed on other grounds that assume the defendant was in fact immune. Given the construction of the assignment of error here, we cannot say the circuit court erred in sustaining Durham's plea in bar of sovereign immunity.

Even if we could look past the assignment of error as drafted, we would nonetheless find that Hamilton failed to adequately plead gross negligence against Durham. "Virginia law defines gross negligence as 'a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care.'"

- 15 -

*Patterson*, 301 Va. at 198 (quoting *Commonwealth v. Giddens*, 295 Va. 607, 613 (2018)).

"Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by [the factfinder]. Nevertheless, when persons of reasonable minds could not differ upon the conclusion that such negligence has not been established, it is the court's duty to so rule." *Frazier v. City of Norfolk*, 234 Va. 388, 393 (1987). "Because 'the standard for gross negligence [in Virginia] is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Elliott v. Carter*, 292 Va. 618, 622 (2016) (alteration in original) (quoting *Kuykendall v. Young Life*, 261 F. App'x 480, 491 (4th Cir. 2008)).

Hamilton has pleaded no facts that would support a finding that either Durham or the bus driver exhibited this degree of negligence, and to the contrary, the amended complaint establishes that the driver exercised some degree of care. Reading the amended complaint together with the contract between Durham and RCPS,[7] the facts as pleaded demonstrate that RCPS selected the bus drop off sites and procedures. The bare allegation that the driver "acted in a negligent and grossly negligent manner . . . when dropping off the plaintiff at the bus stop," demonstrates that Doe acted with at least slight care in dropping Hamilton off at the stop approved by RCPS. Afterall, the parties do not dispute that it was only after Hamilton got off the bus, and was crossing the road, that Hamilton was hit by the passing vehicle. Thus, to the extent the assignments of error could be read to argue that this case should have proceeded against Durham and the driver on a gross negligence theory, that theory was insufficiently pleaded.

---

[7] "When a demurrant's motion craving oyer has been granted, the court in ruling on the demurrer may properly consider the facts alleged as amplified by any written agreement added to the record on the motion." *Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 382 (1997) (citing *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 398 (1985)). In addition, "a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Id.*

Finally, we cannot say that the circuit court erred in sustaining Durham's plea in bar based on Code § 22.1-194, on the theory that Durham (as an agent of RCPS) "is amenable to suit under Code § 22.1-194 as a waiver of sovereign immunity up to the limits of its insurance." By the plain text of the statute, it abrogates sovereign immunity only for "the locality or school board" under qualifying circumstances. We construe the abrogation of sovereign immunity narrowly. *See Melanson v. Commonwealth*, 261 Va. 178, 181 (2001) (explaining that the abrogation of sovereign immunity provided for in Code § 22.1-194 is "in derogation of common law, and, therefore, its limited waiver of immunity must be strictly construed"). Hamilton asserts that "[i]f Durham's immunity depends on the Board's, Durham is likewise stripped of that immunity by the operation of Code §§ 22.1-193, -194, and -195," but provides no statutory analysis to support that claim, and cites no caselaw to support that premise. We cannot say the circuit court erred in granting the plea in bar based on sovereign immunity as to Durham because of Code § 22.1-194.[8]

CONCLUSION

For these reasons, we affirm the decision of the circuit court to grant Durham's plea in bar, but reverse the decision of the circuit court to grant the plea in bar as to RCSB, and remand for further proceedings.

*Affirmed in part, reversed in part, and remanded.*

---

[8] Because we leave the circuit court's ruling on the plea in bar undisturbed as to Durham, we do not need to reach the second assignment of error, arguing that we cannot sustain the circuit court by relying on different grounds.